Judge Mills
delivered the opinion.
Rowzt-r, the appellee, being indebted to the appellant; Smith, and also Smith having beeome his security to others, to secure these debts and also to indemnify Smith against his undertaking as security, executed a mortgage of sundry slaves, and among the rest one named Lucy, which is the subject of controversy in this suit. Sometime after tb¡9 mortgage was executed and recorded, in consideration of part of these demands, Rowzer sold to Smith said girl, Lucy, for two hundred and eighty-five dollars* *528 The parties lived in the same town. The bargain iva» tru'de in the counting room of Smith, the girl Lncv not being present. A third person, then present, fixed the price cf the slave, a* the request of the parties, not bv an inspection of the negro, but from a description of her given by Rowzee, and Rowzee was to deliver the negro b\ sending her from his own house to the house of Smith shortly afterwards, on the same evening. An hour or two after Rowzee had departed. Smith sold the negro to a certain Mr. Bishop, whom he had previously agreed to furnish with a negro of that description, fhe negro was sent to fhe house of Smith that evening, veiled with a shawl or handkerchief, and directly after her arrival and before she was seen by Smith, Bishop, who deposed that he never inspected her farther than to compel her to rise from her seat, to her feet, to examine her size, placed her behind him on ins horse and started home with her, about eight miles distant. She soon complained of sickness and inability to ride, and grew so bad, that alter frequent vest-ings, she was left at a house, on the road, from which she ivas afterwards, shortly, taken to the house of Bishop, where she, on examination, was found to be very ill.— The hair was gone from one side of her head and she exhibited appearances of severe previous sickness. These sales happened on Friday, and on the Monday ensuing Bishop called on Smith, and informed him of the situation of Ihe negro, and required a recission of the contract, to which Smith agreed, and gave up the note of Bishop for the price, and took back his bill of sale for the negro.— The slave remained at Bishop’s and was attended by physicians, employed by Smith, fur some days. An execution, against Rowzee, being in the hands of the sheriff of the county, some time afier the negro was at Bishop’s, Rowzer directed the sheriff to levy the execution upon her as his property, declaring that Smith had not paid him for her. The sheriff did so ; and on the day of sale Smith forbade the sale and claimed the negro, not under his purchase last made from Rowzee but by his aforesaid mortgage. A jury, summoned to enquire into the right of property, determined in favor of Smith, and the slave was delivered to him. He then took her to his house, where she remained still sick, and under the care of physicians for some days longer, when she died. Sometime after her death the debts due from Rowzee to Smith, to secure *529 which the mortgage was given, were paid off, and among the rest a charge of the physicians fees for attending upon Lucy, while at Bishop’s and Smith’s This ^harge, alter some objections on the part of Rowzer, was likewise paid, and the mortgage being thus extinguished, Rowzee brought this action against Smith lor the two hundred and eightv fire dollars agreed upon as her price, when she was sold to Smith, and on the trial the foregoing facts were proved chiefly bv the testimony adduced bv Rowzee. Smith, under the plea of nonassumpsit, resisted the demand, on the ground that Ron.zee had, by his own aci of sending the sheriff to seize and sell the slave as his property, disaffirmed the sale, and also by not claiming the price Of her as a credit in his subsequent payments to Smith ; and lastly, because the sale was fraudulent. The jury found a verdict for Rowzee. Smith asked a new trial, which the court refused, arm Smith excepted spreading the evidence on the record, and he has prosecuted this appeal.
a purchaser of an unsn’nd re,’al[l" of the unsoundness, s^noe^trom whence the may in-ier a. deteT" affirm the sale,
may presume other - facta, but all cir-cuinstunces repelling such presumption, sh *h\ be left
During the prog:css of the trial the court, at the instance of the counsel of Row zee, instructed the jury, that Smith’s retaining the girl in his possession, after bad by settling up his mor gage regained the possession, and not offering to return her was evidence, and a stance from which the jury might infer á confirmation the original sale and purchase. The court also added, that every sickness was not unsoundness, but that the sickness in this case was of that nature to constitute soundness, if the jury believed the evidence.
We perceive no substantial objection to the instructions of the court The reieution of the slave by Smith, was, it is true, an equivocal act, left for the interpretation the jury. It was liable to be repelled b: the circumstance that Smith claimed her from the sneriff. by his mortgage, and by the same instrument had a right to retain, her, and also by the acts of Roivzee in directing the sheriff to levy upon the slave as his own, and not claiming the price of her afterwards and paying the physicians fees, in his subsequent settlement with Smith. But tóese circumstances were not excluded from the jury by the instruc tions given. - ° . .
in such cases we conceive it-proper for a court, when applied to by one party to say, that a fact is evidence from which they may presume another fact, and if there are circumstances repelling that presumption, to extendí *530 &sf ruction so far as to apprize the jury that these repelling circumstances ate also proper for their consideration. A jury may err, when not so informed, by supposing the fact specially named, excludes others introduced to repel. — > But such an error is too problematical to warrant a reversal, especially when, as in this case, it does not appear negatively, from the record, that the court did not so extend their instructions. At ail events the opposite party ought to he presumed to be wary enough to take care of his own interest, and be bound to apply to the court, to íeavé specially for the consideration of the jury, these repelling facts and circumstances. if he did do so, and the Court instructed accordingly, his adversary may not have thought proper to except, on the instructions being given, arid hence the record may be silent andlheeause rightfully conducted. If he did do so, and thé court refused, he ought f6 have excepted to shew the error. If be did not do So, he ought to be presumed to have considered it wholly unnecessary, at the time and under the circumstances of the trial, and to have apprehended no danger resulting from the silence of the court on the repelling circumstances, relied upon by him.
Every sickness is not an Unsoundness
Testimony conducing to establish and disprove' a fact is prop-eriv left to the jury and their verdict sho’ld not be disturbed.
Nor do we conceive that the expression of an opinion by the court “ that every sickness was not an unsoundness,” which seems to be relied on as erroneous, ought to affect the judgment. Not only because the opinion was strictly correct, but also because the court proceeded to ttll the jury, at the same time, that, in this case, the sickness was of that nature which would constitute unsoundness.
If the granting of a new trial, in this case, depended solely upon the facts whether tbefe was a sale from the ap-pellee to the appellant, or whether that sale was after-wards abandoned, by one or both the parties, we should' not feel ourselves at liberty to disturb the verdict, especially as evidence is adduced on both sides tending to prove and disprove these facts, or some of them. In such cases the jury has, in general, the right of decision, and the approbation of the verdict by the court that presided on the trial, ought to weigh much in favor of the verdict.-— But as to the other defence set up by ¿Smith, the appellant, to wit: that if there was a contract of sale and he adhered to it, yet there was a fraud in the sale, and the article sold was of no value, there is greater difficulty iu sustaining the verdict.
Won thesale ⅛ concealed or misrepre-s«nted, the ⅛⅛⅞⅛, the’ contract-
request of the parties. He deposed that the appellee, when he described the slave to the witness, she not being present, said “ she had bad the measles, but was getting well.” It does not appear that Smith beard this state Blent. In consequence of her sickness be, the witness, valued her less, and he would have fixed her price at three hundred dollars if the information of her sickness had not been given. The family physician, of the appellee, stated that he had been called to attend her about ten or twelve days after she had taken the measles, and by some considerable effort he abated a high fever, under winch she labored, and she appeared better and he supposed out off danger. That some days afterwards be was called again to attend her, and she was still diseased, — that he administered more medicine, and shortly after she was sold —that if she had not been moved, and had been well pursed, she might and probably would have recovered -— These facts shew that her illness was of a serious nature, especially when combined with hejr disability to travel, a few hours after the sale, and the appearance of long confinement, discovered by the loss of her hair, and other appearances, the same evening. That the appellee was acquainted fully with her debilitated, and sometimes dangerous, condition, there is no doubt. That he sard any thing about her illness, to the appellant, there is no proof. Thai be represented to the witness, who set a price upon her, her situation to be far less dangerous, than it really was, is also clear from the proof. If be did not inform the ape pellant of her real situation, and was silent about her sickness, he was guilty of a concealment of the truth, which absolved the appellant from all obligations to pay for her, especially as she was of no value,. but an expense while she lived. It he did inform the appellant, as ne did the witness then present, that she had had the measles, hot -was getting well — he evidéntly extended bis informática far short of the truth, and was guilty of a misrepresentation. The circumstance of the price being lessened on aeeaant of her sickness, if the whole truth was not told, or her case misrepresented, cannot render the contract valid or entibe the appellee to recover upon it. Such must have been his own impressions, or lie would after-The proof adduced by the appellee himself, op this sub-A * A 1 _ _⅜ . . L ^ II . J M ..M. A A M « á t. .. n I n «f a A I é 1⅞ A> wands have contended for he# price, ⅛ his settlement with. *532 flic appellant, and would not have paid the physician’s fee1», for ail¡ ndauce upon hi r, after he had parted with hir. This circumstance shews that the commencement of this suit was an alter thought, and an effort to cast the loss upon the appellant, of a slave sold and moved by him at a mo.ment, when, according to the opinion of tais family physician, humanity forbade such an act. For these reasons we conceive the court below ought not to have permitted the verdict to stand, and that a new trial ought to have been granted.
Hardin for appellant.
The judgment must he reversed, with directions to the court below to grant a new trial, on payment of the costs of the former trial, and for new proceedings to be had accordant to this opinion.